|   |   |   |
|---|---|---|
|   | UNITED STATES DISTRICT COURT<br>WESTERN DISTRICT OF WASHINGTON<br>AT SEATTLE |   |
| ALLIED WORLD NATIONAL ASSURANCE COMPANY,<br><br>        Plaintiff,<br><br>    v.<br><br>FOREMOST INSURANCE COMPANY,<br><br>        Defendant. | CASE NO. C20-154 MJP<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

This matter comes before the Court on Plaintiff's Motion for Summary Judgment (Dkt. No. 48) and Defendant's Motion for Summary Judgment (Dkt. No. 25). Having reviewed the Motions, the Oppositions (Dkt. Nos. 44, 59), the Replies (Dkt. Nos. 51, 60), and all supporting materials, the Court GRANTS Plaintiff's Motion and DENIES Defendant's Motion.

**BACKGROUND**

Plaintiff Allied World National Assurance brings claims as assignee of its insured, Smart Circle International LLC, against Defendant Foremost Insurance Company. Allied alleges that Foremost failed to provide Smart Circle with full defense and indemnity coverage in a personal

injury lawsuit against Smart Circle. Allied pursues the following claims: (1) a declaratory judgment that Foremost owed a duty to defend and indemnify; (2) breach of the duty to defend; (3) breach of the duty to indemnify; (4) breach of the duty of good faith and fair dealing; (5) violations of the Consumer Protection Act; and (6) violations of the Washington Insurance Fair Conduct Act.

Allied moves for summary judgment on: (1) its declaratory judgment claim as to Foremost's duty to defend; and (2) its breach of the duty to defend claim. Foremost moves for summary judgment on all claims, arguing that Allied cannot show any injury from Foremost's alleged failure to defend or indemnify Smart Circle.

**A.**      **Underlying Litigation**

The present case has its roots in a personal liability lawsuit filed by Haley Shelland, whose body was badly burned when hot water spilled on her. At the time she was injured, Shelland was working as an employee of Revel Marketing, Inc.—Foremost's insured— and demonstrating Smart Circle's reusable hot/cold packs at a Fred Meyer. Shelland and a co-worker were using a large rice cooker full of boiling water to heat up the packs in a tight space Fred Meyer provided to them. The setup left the cord to the rice cooker exposed. Shelland's coworker ran into the cord, which sent the boiling water onto Shelland, burning 34% of her body. Fred Meyer employees failed to call 9-1-1 and provided minimal assistance.

Shelland sued Fred Meyer and, eventually, Smart Circle. Shelland asserted negligence claims against Smart Circle and Fred Meyer, and an outrage claim against Fred Meyer. Fred Meyer asserted third-party claims against Smart Circle and Revel for breach of contract/failure to indemnify. (See Ex. E. to Decl. of Misty Edmundson (Dkt. No. 58 at 65-77).) But Fred Meyer voluntarily dismissed Revel, and it became a non-party to the case.

1  **B.    Insurance Coverage Related to the <u>Shelland</u> Lawsuit**

2      Smart Circle tendered the claims against it to its insurer, Allied, and to Revel's insurer,

3  Foremost. It argued that it was an additional insured under the Foremost policy because Smart

4  Circle and Revel had executed an indemnity agreement requiring Revel to indemnify Smart

5  Circle. (Dkt. No. 1-2 at 12, 16-17.) Although Foremost initially denied coverage, it later agreed

6  that it had a duty to defend and indemnify Smart Circle in the <u>Shelland</u> lawsuit. But Foremost

7  only agreed to pay 50% of the defense costs, though it paid 100% of Smart Circle's self-insured

8  retention ($25,000). (Decl. of Misty Edmundson ¶¶ 2-3 (Dkt. No. 58).) And Foremost agreed to

9  the defense counsel Allied had appointed.

10      Smart Circle has provided a declaration stating that it "sought a full and complete defense

11  from Foremost in the Shelland Lawsuit." (Decl. of Stephanie Sharma ¶ 7 (Dkt. No. 45).)

12  Foremost's coverage counsel, Misty Edmundson, states that "[n]o one at Smart Circle . . . argued

13  that Foremost should pay for 100% of the defense and indemnity of Smart Circle in the Shelland

14  Lawsuit." (Edmundson Decl. ¶ 4 (Dkt. No. 52).) But Edmundson admits that "Smart Circle did

15  ask why Foremost was paying 50% of the defense fees and costs." (<u>Id.</u> ¶ 6.) She states that Smart

16  Circle never responded to her letter from August 31, 2017 outlining Foremost's reasoning. (<u>Id.</u>)

17  **C.    Settlement of the <u>Shelland</u> Lawsuit**

18      Through mediation in 2018, Shelland settled her claims against Smart Circle. Foremost

19  paid half of the settlement. (Edmundson Decl. ¶ 5 (Dkt. No. 25-1).)

20      Shelland and Fred Meyer then stipulated to a judgment of $2MM against Fred Meyer and

21  Fred Meyer assigned to Shelland its claims against Smart Circle and Allied. This included Fred

22  Meyer's bad faith claims against Allied and its claims for indemnity from Smart Circle. Before

23  executing on the covenant judgment, Shelland and Allied engaged in a meditation in January

24

1  2019. Allied asked Foremost to participate. It ultimately did so but offered only a token

2  contribution that was not accepted. Allied settled the claims against it for $1MM.

3  **D.    Relevant Policy Language**

4  The parties agree that as a result of the indemnity agreement between Revel and Smart

5  Circle, the Foremost policy provides coverage to Smart Circle as an additional insured.

6  (Edmundson Decl. ¶ 2 (Dkt. No. 25-1).) This coverage applies to liability caused, in whole or in

7  part, by Revel's operations or the acts or omissions of Revel's employees. (See Dkt. No. 1-3 at 72,

8  100.) The Allied policy contains an "other insurance" provision, which states that if the insured

9  has "other valid and collectible insurance . . . available to the insured" the Allied insurance "is

10 excess over . . . [a]ny other primary insurance available to you covering liability for damages

11 arising out of the premises or operations, or products completed operations, for which you have

12 been added as an additional insured by attachment of an endorsement." (Cooper Decl. Ex 1 (Dkt.

13 No. 49-1 at 18).) The Foremost policy contains virtually identical language. (See Dkt. No. 1-3 at

14 83.)

15                                        **ANALYSIS**

16 **A.    Summary Judgment Standard**

17 Summary judgment is proper "if the pleadings, the discovery and disclosure materials on

18 file, and any affidavits show that there is no genuine issue as to any material fact and that the

19 movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether

20 an issue of fact exists, the Court must view all evidence in the light most favorable to the

21 nonmoving party and draw all reasonable inferences in that party's favor. Anderson v. Liberty

22 Lobby, Inc., 477 U.S. 242, 248-50 (1986); Bagdadi v. Nazar, 84 F.3d 1194, 1197 (9th Cir. 1996).

23 A genuine issue of material fact exists where there is sufficient evidence for a reasonable

24

1  factfinder to find for the nonmoving party. Anderson, 477 U.S. at 248. The moving party bears

2  the initial burden of showing that there is no evidence which supports an element essential to the

3  nonmovant's claim. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the movant has

4  met this burden, the nonmoving party then must show that there is a genuine issue for trial.

5  Anderson, 477 U.S. at 250. If the nonmoving party fails to establish the existence of a genuine

6  issue of material fact, "the moving party is entitled to judgment as a matter of law." Celotex, 477

7  U.S. at 323-24.

8  **B.    Allied's Motion for Summary Judgment**

9  The Court finds that Allied is entitled to summary judgment on its declaratory judgment

10 claim as to Foremost's duty to defend and its breach of the duty to defend claim.

11  **1.    Declaratory Judgment Claim**

12  No dispute of material fact precludes entry of summary judgment in Allied's favor on its

13 declaratory judgment claim that Foremost owed a duty to defend as the primary insurer.

14  As Foremost admits, it owed a duty to defend Smart Circle as an additional insured in the

15 Shelland lawsuit. (See Edmundson Decl. ¶ 2 (Dkt. No. 25-1).) Given the allegations Shelland

16 made against Smart Circle, Foremost owed a duty to defend "with respect to liability for 'bodily

17 injury' … caused, in whole or in part, by [Revel's] acts or omissions or the acts or omissions of those

18 acting on [Revel's] behalf." (Dkt. No. 1-3 at 72); see Am. Best Food, Inc. v. Alea London, Ltd., 168

19 Wn.2d 398, 404-05 (2010) ("[T]he duty to defend arises when a complaint against the insured,

20 construed liberally, alleges facts which could, if proven, impose liability upon the insured within the

21 policy's coverage" (citation omitted)). Both the Allied and Foremost policies provided primary

22 coverage to Smart Circle. This triggered the "other insurance" provision in the Allied policy

23 because Smart Circle had "primary insurance available to [it] covering liability for damages

24 arising out of the premises or operations, or products completed operations, for which [Smart

Circle] have been added as an additional insured by attachment of an endorsement." (Cooper Decl. Ex 1 (Dkt. No. 49-1 at 18).) Reading the Allied policy's "additional insurance" provision as it must, the Court finds that this rendered Allied's coverage "excess over" Foremost's coverage. (Id.) Foremost thus owed a duty to provide primary coverage to Smart Circle "with respect to liability for 'bodily injury' … caused, in whole or in part, by [Revel's] acts or omissions or the acts or omissions of those acting on [Revel's] behalf." (Dkt. No. 1-3 at 72).

      Foremost advances two incorrect theories as to why the excess provision in the Allied policy does not apply. First, it argues that its coverage was co-primary to Allied's because Allied owed a broader coverage duty to Smart Circle including for the claims Fred Meyer made against Smart Circle. It argues that Allied's insurance policy operated like an umbrella policy that made it primary as to some of the liability Smart Circle faced, so that both the Foremost and Allied policies were co-primary. But Foremost cites no relevant and applicable authority on this point. And its argument fails to reconcile with the express language of the "other insurance" provision in the Allied policy that it made it excess to Foremost's coverage. Accepting Foremost's argument would violate the standard rules of policy construction to give effect to all policy provisions. See Certain Underwriters at Lloyd's London v. Travelers Prop. Cas. Co. of Am., 161 Wn. App. 265, 278 (2011).

      Second, Foremost argues that its coverage is co-primary because the two insurance policies contain "mutually repugnant" excess coverage provisions. But this argument is premised on a misreading of the "other insurance" provision in the policies. The excess "other insurance" clause in the Foremost policy is not triggered because none of the conditions apply relative to Smart Circle. The only potentially relevant clause would apply if Smart Circle was named as additional insured on another insurance policy. But there is no evidence of this in the record.

1  Only the Allied "other insurance" provision applies, and this makes Foremost the primary
2  carrier.

3  **2.      Breach of Contract**

4  There is no dispute of fact that Foremost breached the duty to defend by failing to pay the
5  full cost of Smart Circle's defense in the Shelland matter. Foremost only funded 50% of the
6  defense costs after paying the self-insured retention. Because it was the primary insurer,
7  Foremost owed a duty to fund the full defense. See Nat'l Sur. Corp. v. Immunex Corp., 162 Wn.
8  App. 762, 775 (2011); Truck Ins. Exchange of Farmers Ins. Group v. Century Indem. Co., 76
9  Wn. App. 527, 531 (1995) (noting that an excess insurer owes no duty to defend until the
10 primary insurer has exhausted its obligations); see also Weyerhaeuser Co. v. Calloway Ross,
11 Inc., 133 Wn. App. 621, 627 (2006) ("Washington law requires an insurer to provide a full
12 defense to its insured."). On this basis the Court finds a breach of the duty to defend.

13 Foremost argues that Smart Circle failed to demand Foremost that pay more than 50% of
14 the defense costs and that it "acquiesced" to Foremost's coverage position. (See Def. Opp. to Pl.
15 MSJ at 13 (Dkt. No. 57 at 13).) But Foremost fails to cite a single case in support of this
16 argument and it did not plead waiver or estoppel as a defense in its answer. Even if it had,
17 Foremost has not identified any material facts that could support a claim of waiver or estoppel.
18 Smart Circle's declarant states that it demanded full defense coverage from Foremost. (Sharma
19 Decl. ¶ 7 (Dkt. No. 45); see also Cooper Decl. Ex. B. (Dkt. No. 61-2 at 2).) Foremost cites to its
20 own declaration, stating that Smart Circle never demanded Foremost should pay 100% of the
21 defense and indemnity costs. (Edmundson Decl. ¶ 4 (Dkt. No. 52).) But this statement is
22 inconsistent with the same declarant's admission that Smart Circle questioned why Foremost was
23 only paying 50% of the defense costs. (Id. ¶ 5.) This statement also appears to refer to an email
24

from Smart Circle that shows its interest in obtaining a full defense from Foremost and the fact it had tendered the claim to Foremost. (Cooper Decl. Ex. B. (Dkt. No. 61-2 at 2).) The Court is also unconvinced by Foremost's argument that Smart Circle abandoned its claim for full coverage simply because it did not respond to Foremost's August 2017 letter outlining its coverage position. Foremost has failed to show a genuine issue of material fact in dispute that could excuse its breach of the duty to defend.

C. **Foremost's Motion for Summary Judgment**

Foremost seeks summary judgment on Allied's breach of contract, bad faith, CPA, and IFCA claims on the theory that Allied cannot show any harm or injury. Foremost argues that because Smart Circle received full payment for its defense and indemnification costs from both Foremost and Allied, it suffered no harm. This argument lacks merit for two reasons: (1) the failure of a primary insurer to pay defense and indemnity costs can constitute an injury even if another insurer pays; and (2) Smart Circle provides additional evidence of costs it incurred in trying to make Foremost provide a full coverage. The Court finds that genuine issues of material fact remain in dispute, precluding Foremost's Motion.

1. **Smart Circle's Injury Arising out of Foremost's Incomplete Coverage**

The fact that Allied paid a portion of Smart Circle's defense costs does not mean that Smart Circle suffered no injury.

Under Washington law, an insured who is denied complete defense coverage from its insurer suffers a compensable injury even if someone else pays the attorneys' fees. See McRory v. N. Ins. Co. of New York, 138 Wn.2d 550, 558–59 (1999). In McRory, the primary insurer argued that its insured was not harmed because the excess insurer had footed the defense bill in an underlying suit. The court rejected this "no damages" argument, noting that "Washington law

permits an insured to sue an insurer for the entirety of the loss regardless of whether the insured has received partial reimbursement from another insurer." Id. at 557. In a similar context in a case in this District, the Court noted that an insurer "cannot fulfill its duty to defend merely by claiming that the insured received an adequate defense paid for by another insurer." Nat'l Union Fire Ins. Co. v. Greenwich Ins. Co., No. C07-2065-JCC, 2009 WL 272895, at *6 (W.D. Wash. Feb. 2, 2009). "Accepting [the insurer's] argument would create an untenable incentive for insurance companies to shirk their responsibility to pay defense costs in hopes that another insurer will pick up the bill and absolve it of liability for its failure to defend." Id.

Smart Circle did suffer a cognizable injury when Foremost refused to pay the full defense of Smart Circle. Foremost should have paid for the full defense of Smart Circle in the Shelland lawsuit. Smart Circle suffered an injury as a result, even though Allied stepped in to pay the remaining portions of these costs. See McRory, 138 Wn.2d at 558–59. Foremost's attempts to distinguish McRory lack merit. Foremost claims that McRory only applies where the insurer denies coverage and is therefore inapposite because Foremost never denied coverage. (Dkt. No. 51 at 6.) But functionally Foremost did wrongfully deny full coverage given its unilateral decision to pay only 50% of the costs and 100% of the self-insured retention. Additionally, there is no evidence that Allied acquiesced to the split of coverage, notwithstanding Foremost's arguments about this in its reply. (See Def. Reply ISO MSJ at 6 & 7 (Dkt. No. 51).) In fact, Allied argues that it "did not pay any portion of this settlement as a volunteer." (Pl. Opp. Def. MSJ (Dkt. No. 44 at 7-8).) There appears no evidence of an agreement between the insurers that could insulate Foremost on this issue.

Foremost also misplaces its reliance on the factually distinguishable decision in Ledcor Indus. (USA), Inc. v. Mut. of Enumclaw Ins. Co., 150 Wn. App. 1 (2009). In Ledcor the court

found that the insurer had engaged in bad faith and violated the CPA, but that the insured had failed to show damages because the insurer had: (1) admitted it owed a duty to defend and indemnify; and (2) had paid or was ready to pay all defense and indemnity costs it owed despite not having done so initially. Id. at 11. But here Foremost cannot claim to have agreed to fund all defense and indemnify costs fully. And, as discussed below, Smart Circle claims to have incurred other costs in trying to get Foremost to fund the defense and settlement. So Ledcor stands apart on its facts.

### 2. Additional Evidence of Harm

Foremost's motion also fails to reckon with Smart Circle's claim to have incurred "several thousand dollars" in costs associated with trying to get Foremost to provide a full defense. (See Sharma Decl. ¶ 11 (Dkt. No. 45).) Smart Circle's declarant states that "[a]s a result of Foremost's coverage positions and actions, Smart Circle incurred thousands of dollars in legal fees to pursue the full cost of its defense from Foremost, which Smart Circle would not have had to pay if Foremost had fulfilled the defense and indemnity obligations to Smart Circle it had agreed to under its policy" and that "Smart Circle has not been reimbursed for those fees." (Id.) Foremost asks the Court to disregard this as a self-serving affidavit which lacks sufficient detail to raise a genuine issue of fact. (Def. Reply at 3 (Dkt. No. 51 at 3).) The Court disagrees. While the affidavit could contain more detail and be supported by other documentary evidence, that fact alone does not merit disregarding it entirely. The Court therefore finds this is an additional evidence of harm that renders inappropriate summary judgment in Foremost's favor.

Foremost argues that because Smart Circle never asked to be reimbursed for these costs, it had no duty to provide reimbursement. Foremost relies on Griffin v. Allstate Ins. Co., 108 Wn. App. 133, 141 (2001) for the proposition that an insured must first tender a claim before the

insurer has a duty to defend. (Def. Reply at 4 (Dkt. No. 51).) But that case is inapposite because Smart Circle did tender the claims against it. Nor does the case stand for the proposition that an insured who has already tendered claims against it to an insurer who refuses to fully fund a defense must also then demand reimbursement for costs it incurs trying to compel an insurer to pay for full coverage. Foremost cites no such rule and fails to support its argument on this point.

## CONCLUSION

The Court finds that Allied is entitled to summary judgment on its claims that Foremost owed a duty to defend Smart Circle as the primary insurer and that it breached that duty. And because a genuine issue of material fact exists as to Smart Circle's injuries from Foremost's refusal to provide full coverage, Foremost is not entitled to summary judgment. The Court therefore GRANTS Allied's Motion and DENIES Foremost's Motion.

The clerk is ordered to provide copies of this order to all counsel.

Dated February 1, 2021.

Marsha J. Pechman
United States District Judge